UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
JORDAN S. JOSEPHSON and JORDAN S.
JOSEPHSON, M.D., P.C.,

                    Plaintiffs,

                                        MEMORANDUM & ORDER
          -against-                     11-CV-3665(JS)(ETB)

UNITED HEALTHCARE CORPORATION n/k/a
UNITED HEALTH GROUP, UNITED
HEALTHCARE GROUP, UNITED HEALTHCARE
INSURANCE COMPANY, UNITED HEALTHCARE
INSURANCE COMPANY OF NEW YORK, INC.,
UNITED HEALTHCARE SERVICES, INC.,
UNITED HEALTHCARE SERVICES
CORPORATION, INGENIX, INC.,

                             Defendant.
-------------------------------------X
APPEARANCES
For Plaintiffs:    Lauren M. Levine, Esq.
                   Roy W. Breitenbach, Esq.
                   Salvatore Puccio, Esq.
                   Justin M. Vogel, Esq.
                   Garfunkel, Wild & Travis
                   111 Great Neck Road
                   Great Neck, NY 11021

For Defendant:     Karen C. Higgins, Esq.
                   Peter P. McNamara, Esq.
                   Joseph K. Poe, Esq.
                   Rivkin Radler LLP
                   926 RXR Plaza
                   Uniondale, NY 11556


SEYBERT, District Judge:

        Plaintiffs Jordan S. Josephson ("Dr. Josephson") and

Jordan S. Josephson, M.D., P.C. (the "P.C." and with Dr.

Josephson, "Plaintiffs") sued Defendants United Healthcare

Corporation a/k/a United Health Care Group; United Healthcare

Insurance Company; United Healthcare Insurance Company of New York, Inc.; United Healthcare Services, Inc.; United Healthcare Service Corporation; and Ingenix, Inc ("Defendants") in a case arising out of a health insurer's alleged failure to properly reimburse healthcare providers for the cost of care. For ease of reference, the Court will refer collectively to all Defendants except Ingenix as "United" and, to the extent necessary, refer to Ingenix by its name. Pending before the Court are Plaintiffs' motion to remand (Docket Entry 21) and Defendants' motion to dismiss and strike (Docket Entry 14). For the following reasons, the motion to remand is DENIED and the motion to dismiss and strike is GRANTED IN PART and DENIED IN PART and the Court RESERVES JUDGMENT IN PART.

<u>BACKGROUND</u>

Dr. Josephson is a renowned ear-nose-throat ("ENT") surgeon. (Compl. ¶¶ 4-18.) The P.C. is a New York professional corporation. (<u>Id.</u> ¶ 20.) United is a health insurer that provides health benefit plans primarily in New York, New Jersey, and Connecticut. (<u>Id.</u> ¶ 31.) Defendant Ingenix is a United subsidiary that develops and sells a database that helps insurers determine the "usual, reasonable, and customary rate" (the "UCR Rate") for medical services.

Part of Plaintiffs' practice focuses on performing Functional Endoscopic Sinus Surgery ("FESS") on patients with

2

chronic or recurrent acute sinusitis. FESS restores normal sinus function and preserves patients' sinus structures. (Id. ¶ 33.) To help his patients recover from the procedure, Dr. Josephson administers a series of post-surgery "Debridements" which shorten the recovery time and reduce post-surgery complications. In Dr. Josephson's medical opinion, each debridement procedure is medically necessary. (Id. ¶ 39.)

United's members are permitted to seek medically necessary treatment from out-of-network providers, and although Dr. Josephson is not a member of United's networks, he often treats United's members. (Id. ¶ 40, 43.) Under United's agreements with its members, United is obligated to reimburse the member or the provider the UCR Rate for the services rendered, less any co-payment, co-insurance, out-of-pocket, or deductible amounts. (Id. ¶ 41.)

Plaintiffs "routinely" receive authorizations and assignments from United members so that they can be paid directly from United for their services. (Id. ¶ 45.) According to Plaintiffs, the services they rendered to United's members were covered by the members' policies. (Id. ¶ 50.) And, the members often presented Plaintiffs with insurance cards indicating that United was contractually obligated to pay for medically necessary services. (Id. ¶ 51.) Additionally, United

was aware that Dr. Josephson was treating its members. (<u>Id.</u> ¶ 52.)

The thrust of Plaintiffs' case is that United failed to properly reimburse them for medically necessary services rendered to United's members. Their allegations include that United denied coverage to certain of Plaintiffs' patients (<u>see</u> <u>id.</u> ¶ 2), but mainly Plaintiffs argue that United manipulated the data in the database that governs UCR Rate determinations (<u>id.</u> ¶¶ 79-100). The flawed data allegedly led to a lower UCR Rate, which in turn caused Plaintiffs to be underpaid for their work. Plaintiffs assert six causes of action: (1) a breach of contract claim premised on alleged express contracts that arose between Plaintiffs and United (<u>id.</u> ¶¶ 101-108); (2) a claim that United breached an implied-in-fact contract between Plaintiffs and United (<u>id.</u> ¶¶ 109-118); (3) a contract claim premised on Plaintiffs receiving assignments of United's members' benefits (<u>id.</u> ¶¶ 119-129); (4) an unjust enrichment claim (<u>id.</u> ¶¶ 130-137); (5) a claim under New York Insurance Law Section 3224-a (the "Prompt Pay Law") (<u>id.</u> ¶¶ 138-143); and (6) a claim under New York General Business Law Section 349 (<u>id.</u> ¶¶ 144-155).

## DISCUSSION

The Court will address Plaintiffs' motion to remand first and then turn to Defendants' motion to dismiss and strike.

I. <u>Remand is Improper</u>

Defendants removed this case from state court on the basis of federal question jurisdiction, arguing that Plaintiffs' common-law contract claims are preempted by the Employee Retirement Income Security Act ("ERISA"). Plaintiff now moves to remand. This motion is denied.

Under the ERISA preemption doctrine, even claims that a plaintiff characterizes as sounding in state law are subject to federal jurisdiction if they fall within the scope of ERISA's civil enforcement mechanism. <u>Montefiore Med. Ctr. v. Teamsters Local 272</u>, 642 F.3d 321, 328 (2d Cir. 2011); <u>see also</u> <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 207, 124 S. Ct. 2488, 2494-95, 159 L. Ed. 2d 312 (2004). That mechanism, Section 502(a)(1)(B), provides in relevant part that: "A civil action may be brought - (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) ("ERISA Section 502(a)(1)(B)").

The Second Circuit recently clarified the test, first outlined by the Supreme Court in <u>Davila</u>, for determining whether a state law claim is "within the scope" of Section 502(a)(1)(B). <u>Montefiore</u>, 642 F.3d at 328. There, the court concluded that claims by an in-network health care provider who has received a

valid assignment from an ERISA plan beneficiary and whose claim involves the right to payment from the plan (as opposed to the amount of payment) fall within the scope of Section 502(a)(1)(B). The court found that these claims are completely preempted by federal law and thus they can be removed to federal court. Montefiore, 642 F.3d at 324-25. Because Plaintiffs' third cause of action asserts a claim for plan benefits on an assignment theory (see Compl. ¶¶ 119-129), the Court agrees with Defendants that the removal issue is governed by the result in Montefiore.

Under the Davila test, "claims are completely preempted by ERISA if they are brought (i) by 'an individual [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B),' and (ii) under circumstances in which 'there is no other independent legal duty that is implicated by a defendant's actions.'" Montefiore, 642 F.3d at 328 (quoting Davila, 542 U.S. at 210) (alterations in original). In Montefiore, the Second Circuit unpacked Davila's first prong into two separate inquires: first, whether Plaintiffs are the "type of party" that can bring a claim under Section 502(a)(1)(B), 642 F.3d at 328 (emphasis omitted); and second, whether the "actual claim that [Plaintiffs] assert[] can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)," id. (emphasis omitted). If the answer to these

questions is "yes," then courts proceed to Davila's second prong and ask whether "there is no other independent legal duty that is implicated by [the] defendant's actions." Montefiore, 642 F.3d at 332 (quoting Davila, 542 U.S. at 210).

Here, Plaintiffs' third cause of action is preempted by ERISA. This cause of action asserts a claim for "unpaid benefits for assigned claims" (Compl. ¶ 126) and it encompasses both (a) reimbursement claims for which Plaintiffs were paid less than what they argue they were entitled (id. ¶¶ 123-24) and (b) claims for which they were paid nothing at all (see id. ¶ 2; see also id. ¶ 119 (incorporating preceding paragraphs into third cause of action)).

These allegations pass the Davila test. As to the first step of the first prong, Plaintiffs have standing to assert ERISA claims because United's members assigned them their claims. Montefiore, 642 F.3d at 329. As to the second step of the first prong, the assigned claims are the type of claim that can be pursued under ERISA Section 502(a)(1)(B). Here, courts distinguish claims for plan benefits that turn on the "right to payment" versus the "amount of payment." Id. at 331. Although Plaintiffs assert that the "vast majority" of the reimbursement claims in this suit concern underpayment (stemming from the flawed UCR Rate calculations) rather than a failure to pay altogether (Pl. Remand Reply 8), at least some of the claims

were denied for reasons that would implicate coverage determinations under the terms of the United benefit plans (e.g., Defs. Ex. 8)[1]. And it is enough that a single claim implicates coverage determinations to find federal subject matter jurisdiction. Montefiore, 642 F.3d at 331 & n.11. As to Davila's second prong, the assignment claim does not involve an independent legal duty. The assignment claim turns on Plaintiffs' patients' eligibility for benefits under the terms of United's health plans. (See Compl. ¶¶ 50-52 (alleging that patients were eligible for covered medical expenses under United's plans).) Thus, this claim is "inextricably interwined" with the interpretation of plan coverage and benefits. See Montefiore, 642 F.3d at 332. On that score, the Court agrees with Defendant that the fact that Dr. Josephson is an out-of-network provider does not change Montefiore's applicability to the present case. (See Defs. Remand Br. 14 n.8.)

Plaintiffs' other arguments against ERISA preemption are unavailing. Plaintiffs' reliance on Josephson v. Oxford Health Insurance, Inc., No. 07-CV-2558, 2008 WL 697609, *2 (E.D.N.Y. Mar. 11, 2008), is unhelpful because that decision pre-dated Montefiore and, in any event, granted the plaintiffs'

---

[1] Defendants have demonstrated, and Plaintiffs do not dispute, that there are instances of claims denials in which the insured was a member in benefit plan governed by ERISA. (See Docket Entry 30, Poe Decl. ¶¶ 13-14.)

remand motion in part because it found that the removal had been untimely. Plaintiffs' argument that the state court has concurrent jurisdiction over his claims (Pl. Remand Reply 13) is irrelevant. <u>See</u> Ronald J. Cooke, ERISA PRACTICE AND PROCEDURE, § 8.64 ("The fact that the state courts have concurrent jurisdiction with the federal courts under ERISA § 502(e)(1) means that an action for benefits, to enforce plan rights, or to clarify the right to future benefits may be commenced in the state courts, <u>but is subject to removal to the federal courts</u> . . . ." (emphasis added and footnote omitted)). Similarly, Plaintiffs' argument that remand is inappropriate because Defendants have pursued similar claims in state court (Pl. Remand Reply 14) is not particularly helpful because whether a federal court would have subject matter jurisdiction over that case is not a question that this Court has been asked to answer.

Having concluded that it has jurisdiction over Plaintiffs' third cause of action, the Court determines that it has supplemental jurisdiction over the remainder of Plaintiffs' case. <u>See</u> <u>Montefiore</u>, F.3d at 332-33. Accordingly, Plaintiffs' motion to remand is denied, as is their request for attorneys' fees.

## II. <u>Defendants' Motion to Dismiss and Strike</u>

Before considering Defendants' motion to dismiss, the Court briefly addresses Defendants' request to strike paragraphs

seventy through seventy-six of the Complaint. (Defs. Mot. to Dismiss 22.) Plaintiffs concede that paragraphs seventy through seventy-four can be deleted because the allegations contained therein do not concern United. (See Pl. Opp. to Mot. to Dismiss 2.) They maintain, though, that paragraphs seventy-five and seventy-six do relate to United and thus should not be stricken. (Id.) The Court rules as follows: paragraphs seventy through seventy-five, plus the words "Similarly here" from paragraph seventy-six shall be stricken. These allegations are irrelevant because they do not implicate United or, in the case of paragraphs seventy-five and seventy-six, they incorporate by reference those irrelevant allegations.

Turning now to Defendants' motion to dismiss, the Court considers whether Plaintiffs have pleaded sufficient factual allegations to "state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). The complaint does not need "detailed factual allegations," but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir.2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The Court addresses Defendants' arguments in turn.

A. <u>Breach of Contract and Unjust Enrichment Claims</u>

Defendants argue that Plaintiffs' contract and unjust enrichment claims (causes of action one, two, three, and four) must be dismissed as duplicative and, to the extent that any of them survive this motion, their scope is limited by New York's six-year statute of limitations. (Defs. Mot. to Dismiss 5, 7.) The Court treats Defendants' substantive arguments first and then addresses their statute of limitations argument.

1. <u>Whether Plaintiffs State a Claim</u>

At this stage, the Court declines to dismiss the contract claims because Plaintiffs are permitted to plead alternate theories. <u>See, e.g.</u>, <u>Willman v. Zelman & Associates, LLC</u>, No. 11-CV-1216, 2012 WL 811512, at *5 (Mar. 12, 2012); <u>St. John's Univ. v. Bolton</u>, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) ("At the pleading stage, Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims."); <u>Seiden Associates, Inc. v. ANC Holdings,</u>

Inc., 754 F. Supp. 37, 39 (S.D.N.Y. 1991). Defendants' case on this point, Simington v. Lease Finance Group, LLC, No. 10-CV-6052, 2012 WL 651130, at *11 & n.12 (S.D.N.Y. Feb. 28, 2012), is not to the contrary. There, the court specifically noted that there was no dispute that an agreement existed and that it covered the subject matter of the suit.

Plaintiffs' unjust enrichment claim, however, must be dismissed. This theory asserts that United was unjustly enriched (in the form of higher premiums from their members (see Pl. Opp. to Mot. to Dismiss 17), and it fails to state a basis for recovery because Plaintiffs' services were performed at the behest of his patients, not United. Pekler v. Health Ins. Plan of Greater N.Y., 67 A.D.3d 758, 760, 888 N.Y.S.2d 196, 198 (2d Dep't 2009) ("As the complaint alleges that medical services were performed by the plaintiff doctors at the behest of their patients, no claim in quantum meruit can be asserted against the defendants."); Kirell v. Vytra Health Plans Long Island, Inc., 29 A.D.3d 638, 639, 815 N.Y.S.2d 185, 187 (2d Dep't 2006) ("As the plaintiff's podiatric services were performed at the behest of the patients/enrollees, no claim in quantum meruit can be asserted against the defendants."); see also JLJ Recycling Contractors Corp. v. Town of Babylon, 302 A.D.2d 430, 431, 754 N.Y.S.2d 897 (2d Dep't 2003) ("Under the theory of quantum meruit, if the services were performed at the behest of someone

other than the defendant, the plaintiff must look to that party for recovery."). Moreover, Plaintiffs do not refute this argument. (See Pl. Opp. to Mot. to Dismiss 17.)

>    2.    Whether Plaintiffs' Contract Claims are Limited
>          by the Statute of Limitations

Defendants argue that Plaintiffs' contract claims are limited to the six years that preceded their filing this lawsuit. Plaintiffs respond that the limitations period was tolled by Dr. Josephson's participation in a related class action and/or that Defendants are estopped from asserting a statute of limitations defense.

>    a. American Pipe Tolling

Plaintiffs argue that the statute of limitations as to Dr. Josephson's claims was tolled while Dr. Josephson was involved in an earlier, related class action in the Southern District of New York. See Am. Med. Assoc. v. United Healthcare Corp., No. 00-CV-2800 (S.D.N.Y.) (the "AMA Class Action"). Under American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974), and its progeny, a statute of limitations is tolled while plaintiffs are members of a putative class action, see In re WorldCom Secs. Litig., 496 F.3d 245, 255 (2d Cir. 2007). "Once they cease to be members of the class--for instance, when they opt out or when the certification decision excludes them--the limitation period begins to run

again on their claims." Id. So-called American Pipe tolling is both a federal doctrine and a part of New York common law. See Choquette v. City of N.Y., 839 F. Supp. 2d 692, 697 n.3 (S.D.N.Y. 2012). Federal cases addressing American Pipe have been deemed useful in determining the doctrine's scope under New York law. Id.

The parties' briefs give short shrift to this issue, but the essential disagreement concerns whether Dr. Josephson's participation in the AMA Class Action tolled the statute of limitations on his claims in this case. Plaintiffs do not argue that the P.C.'s limitations period was tolled, and the Court thus concludes that the P.C.'s contract claims are time-barred to the extent that they accrued before March 4, 2005. See N.Y. C.P.L.R. 213. The Court reserves judgment as to whether and to what extent Dr. Josephson's contract claims are time-barred.

### b. Equitable Estoppel

The Court rejects Plaintiffs' argument that Defendants are estopped from asserting a statute of limitations defense. Plaintiffs essentially argue that they could not have brought a timely suit because the data underlying Defendants' UCR Rate calculations was known only to Defendants. (See Pls. Opp. to Mot. to Dismiss 11). Plaintiffs have not alleged any facts that Defendants' fraud, deception or misrepresentation prevented Plaintiffs from filing a timely suit. See, e.g., Flight

_Sciences, Inc._ v. _Cathay Pacific Airways Ltd._, 647 F. Supp. 2d
285, 289 (S.D.N.Y. 2009). Plaintiffs argue that Defendants
"failed to disclose" or "refused to disclose" UCR data (Pls.
Opp. to Mot. to Dismiss 11), but "[w]here concealment without
actual misrepresentation is claimed to have prevented a
plaintiff from commencing a timely action, the plaintiff must
demonstrate a fiduciary relationship . . . which gave the
defendant an obligation to inform him or her of facts underlying
the claim." _Zumpano v. Quinn_, 6 N.Y.3d 666, 675, 849 N.E.2d
926, 930, 816 N.Y.S.2d 703, 707 (2006) (quoting _Gleason v._
_Spota_, 194 A.D.2d 764, 765, 599 N.Y.S.2d 297 (2d Dep't 1993)).
Plaintiffs have not alleged a fiduciary relationship.

    B. Prompt Pay Law Claim

       Defendants argue that Plaintiffs' Prompt Pay Law claim
must be dismissed because there is no private right of action
under that statute. (Defs. Mot. to Dismiss 12.) There is no
private right of action on the statute's face, see N.Y. Ins. L.
§ 3224-a, and there is conflicting authority on whether the law
creates an implied private right of action. In the Court's
estimation, the authority cited by Plaintiffs holds the better
view and, accordingly, Plaintiffs' Prompt Pay Law claim may go
forward.

       New York courts employ a three-factor test to
determine whether a statute implies a private right of action:

"(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." Sheehy v. Big Flats Cmnty. Day, Inc., 73 N.Y.2d 629, 633, 541 N.E.2d 18, 20, 543 N.Y.S. 2d 18 (1989). The parties' disagreement chiefly concerns the second and third prongs. (See Defs. Mot. to Dismiss. 13).

Defendants cite Group Health Inc. v. Kofinas, 2008 N.Y. Slip. Op. 32251U, 2008 N.Y. Misc. LEXIS 9179 (Sup. Ct. N.Y. Cnty. Aug. 1, 2008), which held that a physician could not assert a Prompt Pay Law claim against an insurer because he did not show that the leglistlative purpose of the law would be furthered by private enforcement or that private enforcement was consistent with the legislative scheme. 2008 N.Y. Misc. LEXIS 9179, at *5-6. On the second point, the Kofinas court pointed to the Superintendent of Insurance's authority to enforce the Prompt Pay Law. It relied on Carrube v. New York City Transit Authority, 291 A.D.2d 558, 738 N.Y.S.2d 67 (2d Dep't 2002), to explain that where a statute has a "potent official enforcement mechanism" there will ordinarily not be a private right of action. Kofinas, 2008 N.Y. Misc. LEXIS 9179, at *6-7. But the persuasive value of Kofinas has been called into question

because the aspect of Carrube on which Kofinas rests has been overruled. AHA Sales, Inc. v. Creative Bath Prods., Inc., 58 A.D.3d 6, 17, 867 N.Y.S.2d 169, 178 (2d Dep't 2008).

For their part, Plaintiffs cite a more recent case concluding that there is a private right of action under the Prompt Pay Law. Maimonides Medical Ctr. v. First United American Life Ins. Co., 35 Misc. 3d 570, 575, 941 N.Y.S.2d 447, 452 (N.Y. Sup. 2012). This Court is persuaded that the analysis in Maimonides is the better view. In particular, the Court is persuaded by the Maimonides court's parsing of the Prompt Pay Law's subsection (c). See 941 N.Y.S.2d at 452. In that vein, the Court notes that subsection (c)(2), which exempts insurers from civil penalties where a violation is "determined by the superintendent as a result of the superintendent's own investigation," N.Y. INS. L. § 3224-a(c)(2) (emphasis added), implies that statutory penalties are available in other cases-- i.e., those pursued by private plaintiffs. This suggests that enforcement of the Prompt Pay Law is not left solely to the Superintendent of Insurance.

Accordingly, Defendants' motion to dismiss Plaintiffs' Prompt Pay Law claim is denied to the extent that the claims accrued on or after March 2, 2008. See N.Y. C.P.L.R. 214. The AMA Class Action did not assert Prompt Pay Law claims (see

generally Docket Entry 25-3) and thus it did not toll the limitations period for these claims.

C. New York General Business Law § 349

Plaintiffs' claim under Section 349 of New York's General Business Law (the "Deceptive Practices Act" or the "DPA") is dismissed. To state a claim under the DPA, "a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009). Defendants argue that Plaintiff has not alleged a consumer-oriented deceptive act. (Defs. Mot. to Dismiss 16-17.) The Court agrees with Defendants that the alleged misconduct here--flaws in the data underlying the UCR Rate--was aimed at Dr. Josephson and not the public generally. The UCR Rate was the rate at which Defendants allegedly promised to reimburse Plaintiffs for their medical services, (Compl. ¶ 56); any improprieties in calculating the rate are in the nature of a private dispute between Plaintiffs and Defendants that falls outside the scope of the DPA, which is "directed at wrongs against the consuming public." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744, 623 N.Y.S.2d 529, 532 (1995) ("Private contract disputes, unique to the parties, for example, would not fall

within the ambit of the statute."); see also U1IT4less, Inc. v. FedEx Corp., No. 11-CV-7163, 2012 WL 4459377, at *14 (S.D.N.Y. Sept. 25, 2012) ("Courts have repeatedly held that a Section 349 consumer 'is one who purchase[s] goods and services for personal, family or household use.'" (quoting Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc., 328 F. Supp. 2d 443, 448 (S.D.N.Y. 2004) (alteration in Exxonmobil) (emphasis omitted))); Med. Soc'y of State of N.Y. v. Oxford Health Plans, Inc., 15 A.D.3d 206, 207, 790 N.Y.S.2d 79, 80 (1st Dep't 2005) (in action against insurer, physicians were not "consumers" within meaning of DPA). According, Plaintiffs' DPA claim is dismissed.

D. Punitive Damages

Plaintiffs may not maintain a claim for punitive damages. Punitive damages are available in contract cases where the following conditions are met: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature . . .; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." N.Y. Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316, 662 N.E.2d 763, 767, 639 N.Y.S.2d 283, 287 (1995) (citations omitted). Here, Plaintiffs assert that Defendants' conduct was tortious but does not explain what independent tort was violated. (See Pl. Opp.

to Mot. to Dismiss 24.)  Moreover, for reasons explained in the Court's treatment of Plaintiffs' DPA claim, Defendants' alleged conduct was not directed at the public generally.  Accordingly, Plaintiffs' demand for punitive damages is stricken.

CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand is DENIED.  Defendants' motion to dismiss and to strike is GRANTED IN PART and DENIED IN PART.  As to the motion to strike, paragraphs seventy through seventy-five of the Complaint plus the words "Similarly here" of paragraph seventy-six shall be stricken.  Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  The contract claims (causes of action one, two, and three) survive (subject to the Court's timeliness ruling).  The Prompt Pay Law claim survives, too, to the extent that it accrued on or after March 4, 2008.  The unjust enrichment and DPA claims are dismissed.

The Court RESERVES JUDGMENT on the portion of Defendants' motion to dismiss Plaintiffs' contract claims as time-barred.  Within fourteen days, Plaintiffs shall submit a supplemental brief, no longer than seven pages, detailing their position as to (a) whether American Pipe tolling applies to all three of their contract claims; and (b) the effect of that tolling (i.e., whether the limitations period resumed running at the point at which it was tolled or re-started fresh).

Plaintiffs shall advise the Court when Dr. Josephson opted out of the AMA Class Action. Defendants shall file a reply, not to exceed seven pages, within fourteen days of Plaintiffs' brief. Plaintiffs shall style their brief on ECF as a "motion."

Plaintiffs may file an Amended Complaint consistent with Judge Boyle's order. (<u>See</u> Docket Entry 29.)

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:     September __28__, 2012
           Central Islip, New York